RAY WATSON *et al. v.* THE STATE.

(*Nashville,* December Term, 1932.)

Opinion filed June 24, 1933.

John D. Sprouse, H. C. True and H. C. True, II, for plaintiff in error.

Nat Tipton, Assistant Attorney-General, for defendant in error.

Mr. Justice McKinney delivered the opinion of the Court.

Ray Watson, Elbert Durham, and James Gordon were indicted for robbery of the person of one John H. Walton.

On the first trial, the jury were unable to agree upon a verdict and a mistrial was entered.

On the second trial, a verdict of guilty was returned against the three plaintiffs in error, their punishment being fixed at five years each in the penitentiary. Gordon did not appeal, but filed an affidavit stating that he was in jail, unable to give bond, was led to believe that he would be released after serving a year in prison, and that he would save time by not appealing. He emphatically asserted his innocence. The other two plaintiffs in error have perfected appeals to this court and assigned numerous errors, only one of which it will be necessary to consider, viz.: the misconduct of the jury pending the trial.

The theory of the State is that the three plaintiffs in error met the prosecutor Walton at a negro brew joint in Springfield, operated by Havannah Cooley; that plaintiffs in error entered into a conspiracy to rob Walton; that Watson then left and secreted himself in some

bushes at the place where the robbery was to take place; that the other two plaintiffs in error induced Walton to take a ride with them, driving about four miles toward Nashville; that they then returned to Springfield, drove down a very rough street that is extremely dark on account of bushes and shrubbery on its sides; that they parked their automobile and walked to the home of Frank Cooley to purchase some home brew but were unsuccessful; that as they were returning to their car Watson came out of the bushes and held prosecutor up with a slug shot and took from him $127.50 in money; that Walton resisted Watson and appealed to Durham and Gordon to assist him but they refused. This robbery occurred about ten o'clock at night.

The introduction of evidence was concluded late in the afternoon of the second day of the trial. Upon the adjournment of court the officers in charge of the jury took them for a walk. They proceeded in the general direction of the scene of this crime, and as they neared the place someone suggested that they go and view it, which they did. One of the officers pointed out to the jury the place where it was claimed the car was parked; also certain places where blood was seen the next morning; and approximately the place where the struggle was said to have begun and where it terminated. Some members of the jury were anxious to locate the house of Frank Cooley, and one of the officers inquired of a passing negro as to its location, but this negro made no response. But another negro, who was standing near by, pointed out the home of Frank Cooley, and it was noticed and observed by the jury. Likewise, on their return, the jury passed the home of Havannah Cooley, and observed its location with reference to the scene of the robbery.

▇ Article 1, section 9, of the Constitution provides that the accused hath the right to meet the witnesses face to face, and to be heard by himself and his counsel. The "right to be heard by himself" requires and necessitates the presence of the accused during the entire trial. *Logan* v. *State,* 131 Tenn., 77; *Percer* v. *State,* 118 Tenn., 765; *Richards* v. *State,* 91 Tenn., 724; *Stewart* v. *State,* 47 Tenn., 338; *Andrews* v. *State,* 34 Tenn., 552.

▇ In 16 Corpus Juris, 816, under the title "Criminal Law," it is said: "It is generally held that defendant is entitled to be present when the jury are taken to view the place of the crime, on the ground that this is the taking of evidence and a part of the trial." In the note to the foregoing text, as well as in subsequent annual annotations, will be found many decisions supporting the text. See also cases collected in 30 A. L. R., 1358. While in some of these cases reference is made to the fact that in a few jurisdictions it is held that the purpose of the view is not to serve as evidence for the jury but to enable the jury better to understand the evidence offered in court, we have been cited to no decision that so holds. The object of the jury in viewing the scene is to make clear the situation as to which they are uncertain or confused, and the information thus obtained certainly constitutes evidence. Or, as was said by the Court of Appeals of Virginia, in *Noell* v. *Com.,* 30 A. L. R., 1352, "where there is a reasonable certainty that an inspection of the premises will aid the jury in reaching a right verdict, such an inspection will have, at least, some probative force."

▇ In the case under consideration the jury not only viewed the scene of the crime, but one of their officers gave testimony before them as to the location of the

parked automobile, where blood was discovered the next morning, and the point where the scuffle began and ended; and a negro pointed out to them Frank Cooley's house.

In 22 Encyc. Pl. & Pr., p. 1054, it is said: "In the United States the right to a view is generally regarded as being dependent on statutes and is controlled by them. Accordingly, it is not the usual practice to grant a view except pursuant to an express statute or by consent of the parties."

 The question of waiver, which is dealt with in many of the cases which we have considered, is not involved in this case, for the reason that the misconduct of the jury did not come to the attention of the plaintiffs in error, or their counsel, until after the verdict of the jury. Counsel for the State very frankly concedes that the action of the jury, as detailed herein, constitutes reversible error.

 Since the conduct of the jury violated a constitutional right of plaintiffs in error, chapter 32, Acts of 1911, is not applicable. *Vinson v. State,* 140 Tenn., 70.

From what we have said herein, it follows that the judgment of the trial court as to Watson and Durham will be reversed and remanded for a new trial.