Jerry ERVING, Sr., Appellant,

v.

Maurice SIGLER, Warden, Nebraska
Penal Complex, Appellee.

No. 19413.

United States Court of Appeals
Eighth Circuit.

Aug. 6, 1969.

A. James McArthur, Lincoln, Neb.,
for appellant.

Melvin H. Kammerlohr, Asst. Atty.
Gen. of Nebraska, Lincoln, Neb., for ap-
pellee, Clarence A. H. Meyer, Atty. Gen.
of Nebraska, on the brief.

Before BLACKMUN, GIBSON and
BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Jerry Erving was convicted by a jury
on June 3, 1960, of the first degree mur-
der of one Edward Ellis and was sen-
tenced to life imprisonment by the Dis-
trict Court of Douglas County (Omaha),
Nebraska. The Nebraska Supreme
Court affirmed the conviction[1] and later
affirmed the denial of a post-conviction
petition.[2] Erving has since filed a peti-
tion for writ of habeas corpus in the
United States District Court for Nebras-
ka. Judge Van Pelt denied the petition
and we affirm.

At the trial, the principal witness for
the state was one Donald Williams, who
himself confessed to being an accomplice
in the crime.[3] Williams testified that

1. Erving v. State, 174 Neb. 90, 116 N.W.2d
7 (1962).

2. State v. Erving, 180 Neb. 680, 144 N.W.
2d 424 (1966).

3. Donald Williams later pled guilty to a
charge of second-degree murder and was
sentenced to life imprisonment.

he heard one Milton Howard, Erving's co-defendant who was also sentenced to life imprisonment, state that he would pay $1,000 if Ellis were not able to testify in a narcotics prosecution then pending against Howard. Another witness related a similar conversation in which Howard offered Erving $1,000 and suggested that Ellis "had to go". Erving and Williams went to the Ellis apartment on the night of the murder, Williams armed with a .38 caliber revolver he had earlier acquired from Howard, and Erving armed with a .22 caliber pistol. While Williams at the trial attempted to explain his part in the shooting as an accident,[4] autopsies revealed that Ellis and one Dorothy Elliott, with whom Ellis shared the apartment, had each been shot twice in the head, once with a .38 caliber bullet and once with a .22 caliber bullet. Williams testified that, after shooting Dorothy Elliott, he fled the apartment and, as he did so, he heard the sound of other shots coming from the apartment. Williams stated that he and Erving left the area of the shooting in Erving's car and drove to a nearby lake where Williams threw the murder weapons into the water. Those guns were later retrieved from the lake by the police with Williams' help.

Erving raises two issues in this appeal. Firstly, he contends that his petition should be granted on the ground that certain .22 caliber bullets were unlawfully seized from his home and from his car as a result of warrantless searches and were introduced into evidence at the trial. Secondly, he maintains that the prosecutor's reference in cross-examination to his refusal to answer questions of the police and his demand for legal counsel after his arrest was improper and denied him a fair trial.

■ After Erving's arrest, the Omaha Police Department engaged in a search of his home without the benefit of a search warrant. They found, and the trial court admitted into evidence, a number of .22 caliber shells. The police also searched his car which had been impounded after his arrest and found more of the same type of ammunition in the glove compartment. These were also admitted into evidence. We concur in Judge Van Pelt's finding that these bullets were seized as a result of unlawful searches and were improperly admitted into evidence. While Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (1961), which applied the Fourth Amendment prohibition of unreasonable searches to the states, was decided subsequent to the time of this trial, it is nonetheless applicable since it was decided before Erving's conviction was final, i.e., before all avenues of direct appeal had been exhausted. Linkletter v. Walker, 381 U.S. 618, 622, 85 S.Ct. 1731, 14 L.Ed.2d 601 n. 5 (1965).

■ While there is no doubt that this evidence was improperly admitted, it is our opinion, in view of the nature of the evidence in the context of the state's case against Erving, that the error was harmless. Erving's conviction was based on the testimony of Donald Williams. Rudolph Williams (no relative) furnished some confirmation. The former's testimony, implicating Erving, produced a narrative of events revealing the preparation for and commission of the murder, and the attempt, subsequent to the crime, to hide the evidence. His story was corroborated by the fact of his own possession of a large amount of money which he allegedly received for his part in the crime, by the fact that the victims had each been shot with guns of a different caliber suggesting that two persons might have perpetrated the crime, and by discovery by the police of the two weapons at the place Williams had described. The corroborating witness, Rudolph Williams, swore that he heard Milton Howard "tell Jerry [Erving] that Ellis had to go and it was

---

4. He claimed that Dorothy Elliott was accidentally shot when she attempted to grab the gun from his hand.

a thousand dollars". Rudolph Williams also testified that he heard Milton Howard ask Erving how much money Erving had given to Donald Williams and Erving answered "two-fifty" to which Howard replied that Donald Williams didn't deserve that much. Neither Donald Williams nor Rudolph Williams changed their stories on cross-examination.[5]

Judge Van Pelt found that petitioner's counsel effectively demonstrated in cross-examination that the bullets taken from the house and car were quite commonly possessed and used by a great number of people and were not so distinctive as to definitely connect Erving with the murder weapon. Indeed, an Omaha police officer testified on cross-examination that he himself possessed bullets of the same caliber. In view of the Supreme Court's recent decision in Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (June 2, 1969), we feel that the admission of this testimony cannot be deemed harmful in this case. Like *Harrington*, the case against Erving "was not woven from circumstantial evidence" (395 U.S. at 254, 89 S.Ct. at 1729) and it seems clear that the jury's determination would not have been altered had not this evidence been produced. As in *Harrington*, the other evidence was so overwhelming that we conclude that this state conviction should be left undisturbed.

Petitioner also urges that his Fifth Amendment privilege against self-incrimination had been violated by the erroneous admission of statements made by Erving while in custody in which he refused to answer questions concerning his whereabouts on the night of the alleged crime and demanded to see a lawyer. The prosecutor's use of these statements for impeachment purposes

was intended to unfairly and improperly infer that Erving had something to hide.

In Griffin v. California, 380 U. S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the Supreme Court held that a prosecutor's comments on a defendant's failure to testify in a state criminal trial violated the federal privilege against self-incrimination and required a reversal of the state conviction. *Griffin*, however, is not retroactive and certainly cannot be applied to a state conviction which became final before the Supreme Court first applied the Fifth Amendment self-incrimination provision to the states in Malloy v. Hogan, 378 U. S. 1, 6, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L. Ed.2d 453 (1966). In holding that *Griffin* was not to be applied retroactively, Mr. Justice Stewart observed:

"[I]nsofar as strict application of the federal privilege against self-incrimination reflects the Constitution's concern for the essential values represented by 'our respect for the inviolability of the human personality and of the right of each individual "to a private enclave where he may lead a private life,"' any impingement upon those values resulting from a State's application of a variant from the federal standard cannot now be remedied." Tehan v. United States ex rel. Shott, 382 U.S. at 416, 86 S.Ct. at 465.

Although we agree with the appellant that the testimony was improperly admitted, nevertheless, guided by *Tehan*, we do not feel that this pre-*Malloy* conviction may be overturned on this ground.

Affirmed.

---

5. While Donald Williams later recanted his testimony, we have examined the record and the recantation and agree with Judge Van Pelt's comment that the latter is unbelievable and "farfetched".