IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs June 6, 2017

## HERMAN MCKINLEY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 11-04050    Lee V. Coffee, Judge

_____

### No. W2016-02351-CCA-R3-PC

_____

The Petitioner, Herman McKinley, filed a petition for post-conviction relief, alleging that his trial counsel was ineffective by failing to preserve his right to allocution at the sentencing hearing and by failing to ask the trial court to recuse itself because it signed the Petitioner's arrest warrant. The post-conviction court denied relief, and the Petitioner appeals. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Eric Mogy (on appeal) and James Jones (at hearing), Memphis, Tennessee, for the Appellant, Herman McKinley.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Amy P. Weirich, District Attorney General; and Alanda Dwyer, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### I.  Factual Background

The Petitioner was indicted for the first degree premeditated murder of Toby Gladney; the attempted first degree premeditated murder of Jimmie Williams; the aggravated assault of Williams; the aggravated assault of Laquita Turner; employing a firearm during the commission of a dangerous felony; and the unlawful possession of a handgun by a convicted felon. State v. Herman McKinley, No. W2012-00050-CCA-CCA-R3-CD, 2013 WL 3193415, at *4 (Tenn. Crim. App. at Jackson, June 20, 2013). On direct appeal, this court stated that the Petitioner's

multiple convictions in this case arose from two separate, although related, shootings which occurred on September 23, 2009, at the Claiborne Holmes Apartments in Memphis. Multiple witnesses testified about the two shootings, and certain discrepancies were noted in the various testimony. However, the general testimony offered, with the exception of the [Petitioner's], established that the [Petitioner] approached Laquita Turner and Jimmie Williams outside Ms. Turner's apartment and began an argument because his girlfriend refused to exit the apartment. After leaving the scene, the [Petitioner] returned with a gun and fired one bullet between Ms. Turner and Mr. Williams, although neither party was wounded. The [Petitioner] then left the area again, and police were called to the scene to investigate. After the police left the scene, the [Petitioner] returned and was heard threatening Mr. Williams. He approached the area where Mr. Williams was assisting a neighbor with his automobile and began firing the gun. In the fray, seventeen-year-old Toby Gladney was shot and later died as a result of a gunshot wound to the back.

Id. at *1. The jury convicted the Petitioner of the lesser-included offense of second degree murder in count one and of the remaining offenses as charged. Id. at *4. The trial court sentenced the Petitioner to forty years at one hundred percent for second degree murder; forty years at thirty-five percent for attempted first degree murder; fifteen years at forty-five percent for each aggravated assault; fifteen years at one hundred percent for employing a firearm during the commission of a dangerous felony; and six years at forty-five percent for possession of a handgun by a convicted felon. Id. The trial court ordered the sentences to be served consecutively, for a total effective sentence of one hundred and thirty-one years. Id. On direct appeal, this court affirmed the Petitioner's convictions and sentences. Id. at *6-11.

Thereafter, the Petitioner filed a petition and an amended petition for post-conviction relief, alleging, in pertinent part, that his trial counsel was ineffective by failing to preserve the Petitioner's right to allocution at the sentencing hearing and by failing to ask the trial court to recuse itself because it had signed the Petitioner's arrest warrant.[1]

At the post-conviction hearing, trial counsel testified that he was appointed to represent the Petitioner in 2011, approximately one and one-half years prior to trial. Trial

---

[1]We will limit our recitation of the facts to those pertinent to the Petitioner's issues.

counsel recalled that the case originally was set in Division X, which had a "very, very long wait period for trials" but that the trial court in Division VII "was gracious enough to let us set it in [its] court to get a quick court date."

Trial counsel explained that "'[a]llocution' is where, at the – like, for instance, at a sentencing hearing, a defendant can have his say about, I guess, when he should get a smaller sentence, or he could talk about the facts of the trial if he wants to, and it's not under oath." Trial counsel thought he advised the Petitioner of his right of allocution but acknowledged he "might have missed that." Trial counsel conceded that he did not investigate the circumstances of the Petitioner's prior convictions. Trial counsel recalled that the Petitioner testified at trial but that his testimony did not "get[] into his background or his educational background . . . [or] his work background."

Trial counsel acknowledged that he did not investigate which judge signed the Petitioner's arrest warrant and that he did not know the judge who presided over the Petitioner's trial was the judge who signed the arrest warrant. Trial counsel said that the Petitioner did not ask trial counsel to have the trial judge disqualified.

On cross-examination, trial counsel said that his "hard work" and the Petitioner's testimony were responsible for the Petitioner's being convicted of the lesser-included offense of second degree murder instead of the charged offense of first degree murder.

Trial counsel said that a presentence report was introduced at the sentencing hearing. Trial counsel stated that if the Petitioner had wanted to testify at the sentencing hearing, neither he nor the trial court would have prevented the Petitioner from doing so.

Trial counsel said that the Petitioner's trial originally was scheduled to be heard in Division X, in which trials took approximately one year to be heard. The defense requested the case be transferred, and the request was granted. Initially, the case was transferred to Division III, then it was transferred to Division VII, which "had a quicker trial docket than even III at the time."

On redirect examination, trial counsel said that he did not recall whether the trial court ever invited the Petitioner to speak at the sentencing hearing.

The Petitioner testified that neither trial counsel nor the trial court advised him of his right to allocution at the sentencing hearing. The Petitioner maintained that he learned about allocution only when he did research after his incarceration. The Petitioner said that if he had been allowed to allocute, he would have informed the trial court that he was working as a maintenance man at three privately owned McDonald's restaurants at the time of the sentencing hearing, that he had obtained a general equivalency diploma (GED), and that he was enrolled in a pre-engineering program at Southwest Community

College. The Petitioner said that he "also worked numerous jobs, packing, all kind of stuff."

The Petitioner acknowledged that he had some juvenile adjudications and explained that he "grew up in the projects," that he "did a lot of things that I ain't supposed to," and that sometimes he "pled guilty to . . . charges just because I was with my friend." The Petitioner said that he had six or seven prior convictions that were used to enhance his sentences. The Petitioner said that during his sentencing hearing, trial counsel did not explain to the trial court that most of the prior convictions occurred while the Petitioner was incarcerated and that the trial court instead believed that the convictions were the result of his behavior while "on the street." Specifically, the Petitioner complained, "[T]he picture was painted as if from '95, '96, '97, '98, '99, where I was constantly getting out of jail, catching charges and coming back to jail, which wasn't true." The Petitioner said that during his allocution, he would have explained that the "bulk" of his prior convictions occurred while he was incarcerated for a robbery conviction. He explained that he was tried as an adult when he was sixteen years old and was not released until March 2001 when he was twenty-three years old. The Petitioner stated, "I was young, I was smaller . . . , and at that time in the '90s, the county jail was really, really hard." The Petitioner said that while he was incarcerated, he had to defend himself because at times "older guys, bigger guys tried to take advantage of [him]."

The Petitioner said that the judge who presided over his trial was the judge who signed his arrest warrant. He said that although he was able to get an earlier trial date after his case was transferred from Division X to Division VII, the transfer "violated [his] constitutional right for [the trial judge] to sign [his] arrest warrant and preside over [his] trial, and now [the judge is] doing my Post-Conviction Hearing."

The post-conviction court asked the Petitioner if he had filed any pro se motions while his case was in Division X, including a motion for speedy trial. The Petitioner acknowledged that he had filed a motion for speedy trial. Regarding allocution, the Petitioner said that he did not recall the trial court's asking, "'Do you have anything to say or any questions before these judgments are entered?'" The post-conviction court explained that he did not use the word allocution because the Petitioner might not have understood that term.

The Petitioner said that he committed the crimes while in jail "in the '90s" because no cameras were in the jail, no officers were in the pods, and inmates were being raped, robbed, and killed. The Petitioner said that he was "little" and had to defend himself from other inmates. The post-conviction court noted, "[Y]ou don't have to fight because everybody in jail doesn't get charged with aggravated assault, they don't get charged with arson, they don't plead guilty to setting fire to the jail." The Petitioner responded, "If I didn't fight, [Judge], I would have got my manhood took. I would have been raped."

- 4 -

The post-conviction court explained that "it's the convictions that are used to enhance you, not the underlying stats of the conviction[.]" The post-conviction court also informed the Petitioner that his employment status, GED, and college courses were listed in the presentence report.

The post-conviction court stated that it had reviewed the "extensive" notes it took during the Petitioner's trial, the relevant portions of the trial transcript, the findings during trial, and the direct appeal opinion. The court stated that the case had been transferred from Division X, which "had thirty-five first degree murder cases set for trial," to Division VII, which had "maybe fifteen or sixteen cases set for trial," because the Petitioner had requested a speedy trial. The court said that it had "no independent recollection" of signing the Petitioner's arrest warrant and that it routinely signed a number of arrest warrants.

Regarding allocution, the post-conviction court said that it was not required to examine the facts underlying the Petitioner's prior convictions and that the Petitioner's proposed allocution would not have affected the sentences imposed. The post-conviction court said that although trial counsel did not remember advising the Petitioner about his right to allocution, trial counsel testified that he generally advised all of his clients of the right to allocution. The court also noted that it always asked defendants if they had "'anything to say before these judgments are entered.'" Therefore, the court found that the Petitioner "was given a chance to allocute."

The post-conviction court found that trial counsel "did a remarkable job" representing the Petitioner. The post-conviction court found that the Petitioner had failed to prove that trial counsel was ineffective and denied the petition. On appeal, the Petitioner challenges the post-conviction court's ruling.

## II. Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

The Petitioner first complains that trial counsel was ineffective by failing to "preserve [the Petitioner's] critical right to allocution." This court has explained that allocution is "'[a]n unsworn statement from a convicted defendant to the sentencing judge or jury in which the defendant can ask for mercy, explain his or her conduct, apologize for the crime, or say anything else in an effort to lessen the impending sentence. This statement is not subject to cross-examination.'" State v. Keathly, 145 S.W.3d 123, 125 (Tenn. Crim. App. 2003) (quoting Black's Law Dictionary, 75 (7th ed. 1999)). In his brief, the Petitioner contends:

> If the sentencing court had been able to consider a statement by [the Petitioner], free from the pressures of cross-examination, about [the Petitioner's] efforts to become a productive member of society, it is likely that the court would

- 6 -

have considered this information in its structuring of the service of [the Petitioner's] sentences.

The post-conviction court noted that the information regarding the Petitioner's efforts to become a productive member of society, such as his employment, GED, and enrollment in college courses, was included in the presentence report; accordingly, an allocution would have been cumulative. Moreover, the post-conviction court accredited trial counsel's testimony that he usually informed his clients of the right to make an allocution and thought he informed the Petitioner that he had the right to make a statement to the court. The post-conviction court also recalled asking if the Petitioner had anything to say to the court, which the court explained was equivalent to asking if the Petitioner wanted to make an allocution. The post-conviction court also noted that it had considered the Petitioner's prior convictions in sentencing, that it was not required to examine the facts underlying the Petitioner's prior convictions, and that any allocution regarding the prior convictions would not have made a difference. We agree with the post-conviction court that the Petitioner is not entitled to post-conviction relief in this regard.

Finally, the Petitioner contends that trial counsel was ineffective by failing "to demand recusal of the trial court." The Petitioner maintains that because the trial court signed his arrest warrant, it was constitutionally forbidden from presiding over his trial. In support of his contention, he cites Hamilton v. State, 403 S.W.2d 302 (Tenn. 1966). However, Hamilton is distinguishable from the Petitioner's case. In Hamilton, the general sessions judge who signed the defendant's arrest warrant was later elevated to the criminal court and presided over the defendant's trial. Id. at 302-03; see also Huffman v. State, 458 S.W.2d 29, 38 (Tenn. Crim. App. 1970) (explaining that the Hamilton court "dealt with a constitutional prohibition against a judge presiding over any matters that he had presided over in an inferior court"). Our supreme court found this to be a violation of article 6, section 11 of the Tennessee Constitution, which provides:

> "No Judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he may be interested, or where either of the parties shall be connected with him by affinity or consanguinity, within such degrees as may be prescribed by law, or in which he may have been of counsel, *or in which he may have presided in any inferior Court*, except by consent of all the parties."

Hamilton, 403 S.W.2d at 303 (emphasis added).

In the Petitioner's case, the trial court was acting within its purview as the criminal court when it signed the arrest warrant and was still acting within its purview as the

criminal court when it presided over the Petitioner's trial.  <u>See</u> <u>Sheddrick Harris v. Randy</u> <u>Lee, Warden</u>, No. E2016-01573-CCA-R3-HC, 2016 WL 7176984, at *3 (Tenn. Crim. App. at Knoxville, Dec. 9, 2016) (stating that a criminal court judge acts within his or her capacity when signing an arrest warrant or a search warrant and that "[n]othing prohibits a criminal court judge from issuing a search warrant relative to an individual's property and later presiding over the individual's criminal trial").  Therefore, no inferior court was involved; article 6, section 11 of the Tennessee Constitution was not implicated; and no constitutional provisions were violated.  We conclude that the Appellant is not entitled to relief on this issue.

### III.  Conclusion

In sum, the evidence does not preponderate against the trial court's findings. Accordingly, we affirm the judgment of the post-conviction court.


_____
NORMA MCGEE OGLE, JUDGE