**Esco BAYS, Plaintiff-in-Error,**

v.

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

June 10, 1975.

Certiorari Denied by Supreme Court Sept. 8, 1975.

---

Jean Humphrey, Legal Aid Clinic, Knoxville, for plaintiff-in-error.

R. A. Ashley, Jr., Atty. Gen., and Jack E. Seaman, Asst. Atty. Gen., Nashville, Ronald A. Webster, Dist. Atty. Gen., John W. Gill, Jr., Asst. Dist. Atty. Gen., Knoxville, for defendant-in-error.

## OPINION

DUNCAN, Judge.

The defendant, Esco Bays, and a co-defendant, Dewey Linkous, were both convicted in the Knox County Criminal Court of robbery, with each receiving a penitentiary sentence of not less than six (6) years nor more than ten (10) years. The defendant Bays has appealed his conviction to this Court. Linkous did not appeal.

In his first assignment of error, the defendant alleges that: "The Court erred in not directing a verdict for the Defendant on the charge of Robbery at the close of the State's proof and again at the close of the Defendant's proof; and in any event the evidence was not sufficient to support the verdict and preponderated in favor of the Defendant's innocence."

The evidence in this case was all adduced by the state's witnesses, as the defense of-

fered no proof. The evidence showed that on June 29, 1974, the defendant, along with his co-defendant, Dewey Linkous, another man named Scott, the defendant's wife, and another girl named Debbie Green were out riding around in a car. They were drinking and needed money with which to buy more whiskey, whereupon they went to the Zayre Department Store. After arriving at Zayre's parking lot, Scott and Linkous got out of the car, and Scott grabbed Mrs. Irene Borden's pocketbook. The pocketbook contained combs, pencils, keys, some jewelry, and various other items, including a purse (billfold) which in turn contained identification cards, charge-plates, driver's license, etc. Mrs. Borden was knocked down and dragged some ten (10) feet. The daughter of the victim grabbed Scott and tore his T-shirt. Scott and Linkous got back into the car, which took off at a high rate of speed. The license number of the fleeing vehicle was obtained, and the car was found to be registered in the name of the defendant, Esco Bays.

Officers were called to the scene and they interviewed the victim and witnesses. The officers put out a call regarding the license number of the suspect automobile. In a few minutes the officers located the vehicle about two (2) miles from the scene of the robbery. The defendant and Linkous were found in the vehicle and were removed therefrom. Lying in the seat in plain view were some credit cards and an employer identification card, all belonging to the victim. Over the visor was found the victim's driver's license. The victim identified these items and testified they were in her pocketbook at the time of the robbery. At this juncture, the defendant's wife, Betty Louise Bays, and Debbie Green walked upon the arrest scene. The Green girl took one of the officers to the Bays home nearby and retrieved a wristwatch from inside the home and gave it to the officer. Shortly thereafter, Mrs. Bays went into the same house and retrieved a gold necklace chain and gave it to the officer. On both occasions the officer accompanied each individu-

al inside the house. Both the wristwatch and necklace were identified by the victim as having been taken from her in the robbery. Other items of evidence taken in the robbery were found by the officers in a paper bag on the side of a street.

The proof also showed that as the car was leaving the scene of the incident, the contents of the pocketbook were emptied in the car. One of the men hung the necklace around Mrs. Bays' neck. After they drove up to their house, the defendant unfastened the chain from his wife's neck and told her to take it into the house.

The defendant made a statement to the officers admitting that he was on the scene at Zayre's parking lot, and that one of his associates "grabbed a woman's pocketbook"; that his associate "ran and jumped back in the car with the purse"; that he thought his associate "knocked the woman down"; that his associate "got in the car, and we took off"; and that as they drove toward his house, "the other guy throwed (sic) the purse out of the car."

From the foregoing brief summary of the evidence it is obvious that there is practically no dispute about the facts. From the testimony of the state's witnesses, including even the defendant's then wife, Betty Bays, there is no question but what the defendant's companion robbed Mrs. Borden, and that the defendant drove the vehicle to and from the scene of the robbery. In a matter of minutes the defendant was found in the same vehicle, and several items of the stolen property were found in the vehicle. The finger of guilt points unerringly toward the defendant as one of the guilty perpetrators of this crime.

■ In considering and passing upon an assignment of error challenging the sufficiency of the evidence to warrant and sustain the verdict of the jury in criminal cases, this Court is bound by the rule that a conviction will not be reversed on the facts unless it is shown by the defendant that the evidence preponderates against the verdict and in favor of his innocence. *McBee v.*

*State,* 213 Tenn. 15, 372 S.W.2d 173; *Schweizer v. State,* 217 Tenn. 569, 399 S.W.2d 743; *McGhee v. State,* 3 Tenn.Cr. App. 324, 460 S.W.2d 875.

■ By no stretch of the imagination can it be said that the evidence here preponderates against the verdict of the jury. The evidence against the defendant is overwhelming. It shows, without the slightest doubt, that the defendant, Esco Bays, was aiding and abetting in the commission of this robbery. T.C.A. § 39–109. The trial judge was correct in not directing a verdict for the defendant. *Shanklin v. State,* Tenn. Cr.App., 491 S.W.2d 97. The assignment on the evidence is overruled.

In assignment of error no. 2, the defendant contests the admission in evidence of the credit cards and driver's license belonging to the victim.

The proof showed that the officers involved in the seizure of these items had interviewed the victim and witnesses on the scene of the robbery, and had learned that a robbery had been committed. They also learned what items had been taken in the robbery. They obtained the license number of the get-away vehicle, and minutes later found the vehicle, being occupied by the defendant and Linkous, whereupon they proceeded to arrest the defendants.

■ Some of the items were found in "plain-view," but without even discussing the "plain-view doctrine," it is axiomatic that upon arresting the defendants upon reasonable cause that they had committed a felony (T.C.A. § 40–803(3) and (4)), the officers' search of the vehicle was plainly incident to such arrest. Thus, the search was constitutionally permissible and the evidence concerning the fruits of the search was admissible.

■ It is fundamental law that one lawfully arrested may be searched in his person or premises where arrested, without a warrant, provided the search is incidental to the arrest. *Armour v. Totty,* Tenn.Sup.Ct., 486 S.W.2d 537; *Batchelor v. State,* 213 Tenn.

649, 378 S.W.2d 751; *Greer v. State,* 1 Tenn. Cr.App. 407, 443 S.W.2d 681; *Cole v. State,* 4 Tenn.Cr.App. 645, 475 S.W.2d 196, and cases therein cited.

In addition to the authorities above stated, certainly the seizure of these items fall within the ambit of *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419.

This assignment does not have merit.

The defendant next complains that the necklace and watch obtained from the defendant's home should not have been admitted into evidence on the grounds that they were obtained as a result of an illegal search and seizure.

■ The proof showed that Mrs. Bays took the officer to the Bays home and voluntarily obtained the necklace and handed it to him. The officer did not search the house, even though invited to do so by Mrs. Bays. Even if what transpired here could be said to constitute a search, then certainly Mrs. Bays consented to the search. Mrs. Bays testified at the trial and admitted she consented to a search. Also the officer stated that she gave her complete permission, but that he did not carry out a search. For whatever significance it might have, we are satisfied that Mrs. Bays gave her voluntary consent to the officer's entrance into the house, and that she did so intelligently.

■ A wife can consent to the search of her home and if objects are found which would incriminate her husband, such objects are admissible in evidence. *Lester v. State,* 216 Tenn. 615, 393 S.W.2d 288; *McCravey v. State,* 2 Tenn.Cr.App. 473, 455 S.W.2d 174.

■ With respect to the wristwatch admitted in evidence, we have some reservations. The proof showed that shortly after the robbery, Debbie Green secreted this watch in the Bays home. She later went, in company with the officer, to the house, retrieved it and gave it to the officers. While near in point of time, this incident did not occur at the same time as the inci-

dent involving Mrs. Bays referred to above. Apparently, the Green entry, along with the officer, occurred a few minutes earlier, and there is no evidence that anyone else was in the Bays home at the time. Also no evidence is shown that Debbie Green lived at that house, had any possessory interest in said home, or was legally sanctioned in any manner to allow admittance of the officer to the Bays home. Even though Green had left the watch in the premises a short while before, had consented to take the officer inside, and voluntarily turned the watch over to the officer, we are still of the opinion that this item of evidence was seized by virtue of an illegal intrusion into the Bays home by the officer. Nevertheless, the admission of this one item of illegally seized evidence pales by comparison when pitted against the volume of other items of incriminating evidence which were properly seized and lawfully admitted in evidence.

Because of the inconsequential nature of this error, and due to the overwhelming proof showing the defendant's guilt in this case, we are satisfied that the introduction into evidence of this wristwatch constitutes merely harmless error. T.C.A. §§ 27–116, 117. Further, we find such to be harmless beyond a reasonable doubt. *Daugherty v. State,* Tenn.Cr.App., 478 S.W.2d 921; *Huffman v. State,* 3 Tenn. Cr.App. 124, 458 S.W.2d 29; *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

In his last assignment, the defendant says that the court erred in failing to charge on "the lesser included offenses of Receiving Stolen Property and Concealing Stolen Property."

While, as the state insists in its brief, it is arguable as to whether receiving stolen property and concealing stolen property are lesser included offenses in the offense of robbery, we do not find it necessary to address this issue in this case. Here the proof incontrovertibly shows the defendant to be guilty of robbery. Even where a lesser offense is included in a charge, if the proof clearly shows a defendant has committed the higher offense of which he was convicted, it is not error if the court fails to charge on the lesser included offense. *Martin v. State,* Tenn.Cr.App., 497 S.W.2d 583; *Patterson v. State,* 218 Tenn. 80, 400 S.W.2d 743; *James v. State,* 215 Tenn. 221, 385 S.W.2d 86.

We conclude that there is no merit to this last assignment of error.

We have carefully reviewed the entire record and we find no reversible errors.

We express our appreciation to the defendant's appointed counsel for her able representation of him. She was faced with a conclusive set of facts against her client, yet she advocated his cause with vigor and diligence.

The judgment of the trial court is affirmed.

RUSSELL and O'BRIEN, JJ., concur.