STATE of Tennessee, Appellee,

v.

**Steven Wayne McMAHAN and Mitchell Holland Coakley, Appellants.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Feb. 1, 1983.

Permission to Appeal Denied by Supreme Court May 2, 1983.

Ben W. Hooper, II, Newport, for appellant, McMahan.

Edward F. Hurd, Newport, for appellant, Coakley.

William M. Leech, Jr., Atty. Gen., J. Andrew Hoyal, II, Asst. Atty. Gen., Nashville, Al Schmutzer, Jr., Dist. Atty. Gen., Sevierville, William H. Leibrock, Asst. Dist. Atty. Gen., Newport, for appellee.

## OPINION

SCOTT, Judge.

The appellants were indicted for armed robbery, and Mr. McMahan was also indicted for aggravated assault. Both were found guilty of robbery and sentenced to not less than five nor more than ten years in the state penitentiary. In addition, Mr. McMahan was convicted of aggravated assault and received a sentence of not less than one nor more than two years in the state penitentiary. The trial judge ordered this sentence to be served consecutively to the robbery sentence. In this appeal the appellants have presented two issues. First, they question whether the trial judge erred by overruling the motion to suppress the evidence seized as the result of an allegedly illegal search. In the second issue they question the sufficiency of the convicting evidence.

At approximately 1:00 A.M., on February 17, 1981, a Publix Gasoline Station in Cocke County was robbed. The attendant, Kelly Brown, was on duty at the time, and Kendall Williams, a friend of Mr. Brown's, was also present.

Two men entered the station. One was armed with a stick and the other with a gun. Approximately $280.00 was stolen. Among the items taken were a partial roll of dimes with "$4.00" written thereon in Mr. Brown's handwriting and the keys to the cash register and the station door. The man with the gun used it to severely beat Mr. Williams in the head prior to their departure.

Immediately after the hold up law enforcement officers were notified, and Mr. Williams drove himself to the hospital. When interviewed at the hospital, Mr. Williams told the officers that the man who assaulted him was Mr. McMahan. Even though he was masked, Mr. Williams recognized Mr. McMahan as he first came through the door of the service station. He knew Mr. McMahan well since he lived next door to him and they had been classmates in school since the first grade. Mr. Williams recognized Mr. McMahan's walk and his crippled arm. As Mr. McMahan hit Mr. Williams with the pistol, Mr. Williams noticed that the crippled arm never moved.

The McMahan residence was located approximately 400 to 500 feet from the service station where the robbery occurred. Following the lead given by Mr. Williams, Don Coakley, a police officer, went to the McMahan residence at approximately 3:00 A.M. that morning. Mr. McMahan, who had been watching a ball game on television, answered the door and the officer asked Mr. McMahan if he could talk with him. Mr. Coakley inquired as to whether anyone else was there and Mr. McMahan replied that his mother and Mitch Coakley were there. The officer, Don Coakley, is the uncle of the appellant, Mitch Coakley. The officer went to one of the back bedrooms where he found his nephew lying in bed. He questioned Mitch Coakley about the robbery, and he denied any knowledge of it. Thereupon, Officer Coakley began an extensive search of the bedroom, which took fifteen to twenty minutes to complete. The officer moved a stereo speaker out from the wall and found a bag containing the roll of dimes and the keys. The appellant, Mr. Coakley, denied any knowledge

about the presence of the items in the speaker. During this time Mr. McMahan remained in another part of the house. The roll of dimes was identified by the attendant, and it was determined that the keys fit the door and the cash register of the service station. The appellants were arrested and eventually charged.

The State's case consisted of the proof outlined above. Mr. McMahan presented no proof and Mr. Coakley presented three character witnesses.

The first question is whether the search which yielded the incriminating evidence was valid. A warrantless search is per se unreasonable, unless it falls into one of the narrowly defined and carefully drawn exceptions to the warrant requirement, i.e., searches incident to a lawful arrest, those made by consent, in the "hot pursuit" of a fleeing criminal, "stop and frisk" searches, and those based on probable cause in the presence of exigent circumstances. *State v. Shaw,* 603 S.W.2d 741, 742 (Tenn.Cr.App. 1980). The appellants, in their excellent brief, argue vigorously that this search fits into none of these categories. The State argues with equal vigor that it fits into three of the categories.

First, the State contends that Mr. McMahan consented to the search when he allowed the officer to enter his home, and that Mr. Coakley impliedly consented to the search by failing to object when his uncle began searching.

■ Of course, consent voluntarily and understandingly given is effective to waive the constitutional right to a search warrant. The sufficiency of the consent depends largely upon the facts and circumstances presented by each particular case. The burden is on the prosecution to prove that the consent was given freely and voluntarily. *Herron v. State,* 3 Tenn.Cr.App. 39, 456 S.W.2d 873, 878 (1970). The existence of consent and whether it was voluntarily given are questions of fact. *Maxwell v. Stephens,* 348 F.2d 325, 336 (8th Cir.1964). Voluntariness is necessarily undermined when the police utilize trickery, fraud or misrepresentation to obtain consent. *Unit-*

*ed States v. Griffin,* 530 F.2d 739, 743 (7th Cir.1976). The grant of consent for police to enter one's home for any purpose cannot be said to be freely and voluntarily given unless the person consenting is aware of the purpose for which the officers seek to enter. The notion of free and voluntary consent necessarily implies that the person knows what he is allowing the police to do. *State v. Bailey,* 417 A.2d 915, 919 (R.I.1980). Here, Mr. McMahan allowed the officer to enter his home to "talk to him". He showed the officer the bedroom where Mr. Coakley was in bed, but there was never any mention of a search. Officer Coakley never contended that his nephew gave him permission to search, but the State contends he did so by implication. The most that can be said of the confrontation between the Coakleys is that Mr. Coakley resigned himself to the fact that a search was taking place. Failure to actively oppose a search being undertaken by law enforcement officers does not constitute the giving of free and voluntary consent.

In any event, any consent Mr. Coakley may have given would have been invalid as to Mr. McMahan. The proof did not reveal that he had any ownership or possessory interest in the McMahan home. Hence, he had absolutely no authority to waive any of Mr. McMahan's constitutional rights. *Bays v. State,* 529 S.W.2d 58, 61–62 (Tenn.Cr. App.1975).

■ Next, the State attempts to justify the search as incident to a lawful arrest. The scope of such searches is limited to "search of the arrestee's person and the area 'within his immediate control'", i.e., the area from within which he might gain possession of a weapon or destructible evidence, the so-called "grab area". *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). The United States Supreme Court specifically held that there is no comparable justification for routinely searching any room other than the one in which the arrest occurs or searching through closed or concealed areas of that room. *Id.*

■ Although the officer had probable cause to arrest Mr. McMahan based on the identification by the victim, the search of the bedroom cannot be justified as a search incident to his arrest. He was in another part of the house the entire time and was not arrested until the search was concluded. The thorough search of any concealed area was clearly beyond Mr. McMahan's "grab area" and thus beyond the scope allowed by *Chimel.*

■ Nor can the search be justified as incident to the arrest of Mr. Coakley, for there was no probable cause to arrest him until after the fruits of the robbery were discovered. Mr. Coakley was never identified as one of the robbers, and there was nothing to tie him to the crime except the fact that he was in the bed at the McMahan home two hours after the robbery. A search incident to an arrest may not precede the arrest and serve as part of the justification for the arrest. *Sibron v. New York,* 392 U.S. 40, 63, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917 (1968). Hence, this search cannot be justified as incident to the arrest of either appellant.

Finally, the state seeks to justify the search under the "exigent circumstances" exception to the warrant requirement. The State contends that the police were "laboring to apprehend fleeing and dangerous felons in the period of time immediately following the commission of the crime", i.e., in "hot pursuit".

■ There is a "hot pursuit" exception to the warrant requirement. *United States v. Santana,* 427 U.S. 38, 42–43, 96 S.Ct. 2406, 2409–2410, 49 L.Ed.2d 300 (1976). Under circumstances where the delay necessary to procure a search warrant would endanger life, officers may enter in hot pursuit. *Warden v. Hayden,* 387 U.S. 294, 298–299, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). It has been held that this is also true where there is a danger of imminent destruction or removal of evidence. *United States v. Guidry,* 534 F.2d 1220, 1223 (6th Cir.1976). But, the mere existence of "exigent circumstances" does not, standing alone, validate a warrantless search. The

burden is on the state to prove that "the exigencies of the situation made the search imperative". *Rippy v. State,* 550 S.W.2d 636, 641 (Tenn.1977).

■ In this case approximately two hours elapsed between the time of the robbery and the time that the officer went to the McMahan home. Approximately forty-five minutes had elapsed between the time the officers received the information that McMahan was one of the perpetrators of the crime and the time the officer went to investigate. There is no evidence that any attempt was made to obtain either an arrest warrant or a search warrant. However, the proof revealed that it was accepted practice to procure warrants at the General Sessions Judge's home in the middle of the night when necessary. There is no evidence in the record that there was any reason to believe that the appellants would escape or that the evidence would be destroyed during the time required to obtain a search warrant. Indeed, the evidence is entirely contrary. The search cannot be justified under the "exigent circumstances" exception.

Because the warrantless search cannot be justified under any of the exceptions to the search warrant requirement, the evidence should have been suppressed, and the failure to do so was error.

■ However, the inquiry does not stop there. Even though it was error, as to Mr. McMahan, it was harmless. Rule 52(a), T.R.Cr.P., Rule 36(b), T.R.A.P. If the error is of constitutional dimensions, in order to be considered harmless, the court must find that the error was harmless beyond a reasonable doubt. *Huffman v. State,* 3 Tenn. Cr.App. 124, 458 S.W.2d 29, 39 (1970). In this case the error clearly was harmless beyond a reasonable doubt. One of the victims who had known Mr. McMahan almost all of his life and lived next door to him, positively and unequivocally identified him as one of the robbers and as the one who hit him. This evidence alone was sufficient to justify a rational trier of fact in finding him guilty beyond a reasonable

doubt. Rule 13(e), T.R.A.P., *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 2786–2792, 61 L.Ed.2d 560 (1979).

The evidence of the fruits of the crime did not influence the jury's verdict. Although charged with armed robbery, which carries a penalty of ten years to life imprisonment, TCA § 39–3901(a), Mr. McMahan was found guilty of robbery and sentenced to not less than five nor more than ten years. TCA § 39–3901(a). Hence, it is obvious that the illegal evidence did not affect the verdict.

The evidence against Mr. Coakley was entirely circumstantial. Of course, a crime may be proven wholly by circumstantial evidence. *Duchac v. State,* 505 S.W.2d 237, 241 (Tenn.1973). To warrant a conviction based solely upon circumstantial evidence, the facts must be consistent with the guilt of the defendant, inconsistent with his innocence, and must exclude every other reasonable theory or hypothesis except that of guilt. *Pruitt v. State,* 3 Tenn.Cr.App. 256, 460 S.W.2d 385, 390 (1970). In circumstantial evidence cases single facts of themselves may account for little weight, but when they are pieced together the facts and circumstances may unerringly point the finger of guilt at the defendant to the exclusion of all others beyond a reasonable doubt. *Hicks v. State,* 490 S.W.2d 174, 178 (Tenn.Cr.App.1972).

Mr. Coakley was never identified by either of the victims. No incriminating statements were made by either appellant implicating themselves or each other. The only evidence against Mr. Coakley is the fact that two hours after the crime he was in the bed in the same room in which the fruits of the crime were hidden. Therefore, as to Mr. Coakley, either with or without the illegally obtained evidence, there was simply insufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt. Rule 13(e), T.R.A.P., *Jackson v. Virginia,* supra.

As to Mr. McMahan, the judgment is affirmed; as to Mr. Coakley, it is reversed and must be dismissed. *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 2154, 57 L.Ed.2d 15 (1978).

CORNELIUS, J., concurs.

DWYER, J., concurs as to the affirmation of Steven Wayne McMahan conviction but see separate dissenting opinion as to Mitchell Holland Coakley.

DWYER, Judge, dissenting.

In all deference to my colleagues, I must respectfully dissent from this reversal of appellant Coakley's conviction. I would, in reasons hereafter related, affirm his conviction.

A preliminary point, which I believe needs clarification, is that the evidence obtained via the bedroom search should not have been suppressed at least in regards to the prosecution of Mr. Coakley. While focusing on the sufficiency issue as being determinative of this case, the majority opinion remains unclear as to the unique suppression question posed by appellant Coakley's presence in the bedroom.

In the first instance, the officer's discovery of the stolen money and keys in the speaker cabinet in McMahan's house was not shown to have involved any legitimate expectation of privacy of Coakley. The home was McMahan's; Coakley has not advanced any evidence establishing how he had a legitimate expectation of privacy on those premises at that time. *State v. Roberge,* 642 S.W.2d 716 (Tenn.1982). I can agree with the majority that the warrantless search of McMahan's bedroom in his own home violated his Fourth Amendment rights. Coakley, however, has not established any expectation of privacy in the premises of McMahan and cannot assert any Fourth Amendment rights McMahan might have had in regards to his, not Coakley's, bedroom stereo system.

In the second instance, when the officer entered McMahan's home he was aware that two men had robbed the service station. He was also aware that one of the robbers had been identified as McMahan. When he saw Coakley at McMahan's home he called upon his common sense to con-

clude that Coakley was the other robber and thus under these facts had probable cause to arrest Coakley. He did not have to have absolute assurances that he was correct, only a reasonable probability. See *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The search, therefore, was incident to the lawful arrest of Mr. Coakley.

It is not significant that the officer did not immediately place Coakley under arrest. The fact is that there was probable cause for the arrest at that time. Unlike *Sibron v. United States,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), relied upon by the majority, where an officer frisked first, found the pistol, and then arrested, here the officer had probable cause to arrest before the search was made. The facts of the instant case are more akin to those of *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), where the defendant admitted to ownership of a sizeable quantity of drugs discovered on the premises, was frisked and found to be carrying money and a knife, and then was arrested. Referring to the legality of the search for the money and the knife, Justice Rehnquist held:

"Where the formal arrest followed quickly on the heels of the challenged search of the petitioner's person, we don't believe it particularly important that the search preceded the arrest rather than vice versa."

The majority bases its reversal of Coakley's conviction on the conclusion that the evidence, with or without the "illegally" obtained evidence, was insufficient to meet the requirements of T.R.A.P. 13(e) or *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It must be remembered that Coakley has been convicted and is before us on a presumption of guilt. The State's theory that he was the other robber has been endorsed by the verdict of the jury. In this court we are not required to review the evidence of guilt beyond a reasonable doubt. We are bound to determine only if there is a sufficiency of evidence to convince any rational trier of fact of guilt

beyond a reasonable doubt. T.R.A.P. 13(e). The reasonable doubt standard is "one 'based on reason which arises from the evidence or lack of evidence.'" *Jackson v. Virginia, supra,* at 317 n. 9, 99 S.Ct. at 2788 n. 9 (quoting *Johnson v. Louisiana,* 406 U.S. 356, 360, 92 S.Ct. 1620, 1624, 32 L.Ed.2d 152 (1972). Once the State has established its case, the defendant remains quiet at his peril. *Holland v. United States,* 348 U.S. 121, 138–139, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954). When an appellate court is faced with a possible reversal on grounds of insufficient evidence, "such a decision will be confined to cases where the prosecution's failure is clear." *Burks v. United States,* 437 U.S. 1, 16–17, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978).

In examining this record under that standard, is there evidence upon which a reasonable trier of fact could conclude that Coakley was guilty? Two male robbers held up the service station and severely assaulted Williams, the attendant's friend. The appellant McMahan was positively identified as one of the armed robbers. Within two hours of the robbery McMahan was arrested in his home, five hundred feet from the service station. In his home were his mother and Coakley. The officer found Coakley in the bedroom, awake but lying on the bed in his trousers. The hour was 3:00 a.m. Within a few feet of Coakley the stolen keys and money were discovered. While Coakley's not testifying in the trial court cannot be considered against him at the trial level, that inhibition does not hold true on appellate review where the question is the sufficiency of the evidence, as here. Every fact proven by the State as to Coakley was consistent with his guilt and inconsistent with his innocence. No reasonable hypothesis of the innocence of Coakley is to be found in this record now or at the trial level; that is, unless we conjure up some imaginary hypothesis which has not been presented here or at the trial level. Under these facts any rational trier of fact could and did find Coakley guilty beyond a reasonable doubt.

The majority further concludes that the evidence as to Coakley with or without the finding of the money and keys near Coakley is insufficient. With this broad assumption I cannot agree. If the keys and money had been illegally obtained and suppressed, I would perhaps have second thoughts about the sufficiency of the evidence as to Coakley. That, however, is not the case here. The finding of the keys and money in close proximity to Coakley conclusively fits together with all of the facts and circumstances to point the finger of guilt to Coakley as the other robber. This uncontradicted evidence is a far cry from the criteria in *Burks v. United States, supra,* which commands that to set aside the conviction on insufficiency of the evidence the prosecution's failure must be "clear." It is not clear; the evidence is more than ample to support this conviction.

I would affirm the conviction of Coakley.