IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 28, 2001

## STATE OF TENNESSEE v. GREG STEWART

**Appeal as of Right from the Circuit Court for Coffee County**
**No. 29, 113    John W. Rollins, Judge**

————————————

**No. M2001-01056-CCA-R3-CD - Filed February 15, 2002**

————————————

Pursuant to a bench trial, the appellant, Greg Stewart, was convicted of two counts of simple possession of a controlled substance. The trial court sentenced the appellant to two concurrent terms of eleven months and twenty-nine days incarceration in the Coffee County Jail. On appeal, the appellant contests the trial court's denial of his motion to suppress the drug evidence due to the lack of proper consent to the search. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Robert S. Peters, Winchester, Tennessee, for the appellant, Greg Stewart.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; C. Michael Layne, District Attorney General; and Doug Aaron, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

On March 8, 1999, Officer Larry Miller with the Manchester City Police Department received information from an anonymous female that the appellant was selling narcotics out of his house on 707 Vincent Street.[1] Officer Miller contacted Detective Mark Yother, and together the officers went to the appellant's address. Upon arriving, the officers knocked on the door and, when the appellant answered the door, identified themselves. Officer Miller testified at trial that the

---

[1] The appellant later claimed that the informant was his niece, Nellie Hondo, who was living with him at the time.

officers requested permission to enter the residence, to which request the appellant replied, "Come on in."

Once the officers were inside the residence, Detective Yother explained to the appellant that they had obtained information that he possessed narcotics in the house. Detective Yother then requested permission to search the appellant's residence. The appellant replied, "You can go ahead." Detective Yother remained in the kitchen with the appellant while Officer Miller conducted a search of the residence. Acting on information received from the informant, Officer Miller specifically searched a chest of drawers in the appellant's bedroom and discovered small amounts of marijuana and methamphetamine. At trial, Officer Miller contended that the appellant denied knowledge of the presence of the drugs; however, Detective Yother asserted that the appellant admitted the drugs were his and initially offered to assist the police in apprehending his supplier.[2] Both officers firmly maintained that no search was conducted prior to the appellant's consent.

The appellant requested that the trial court proceed with the motion to suppress simultaneously with the bench trial. After hearing the evidence, the trial court overruled the appellant's motion to suppress and found the appellant guilty of one count of simple possession of methamphetamine and one count of simple possession of marijuana, both class A misdemeanors. See Tenn. Code Ann. § 39-17-418(a) (1997). The trial court sentenced the appellant to eleven months and twenty-nine days incarceration for each conviction. The appellant now appeals the denial of his motion to suppress.

## II. Analysis

The appellant contends that the police illegally searched his residence because "entry into the [appellant's] residence was obtained without the [appellant] being aware of the purpose for which the officers sought to enter the premises, and . . . the purported consent to search only occurred after a conversation which took place inside the [appellant's] residence." The State disagrees, arguing that the appellant's "consent was given knowingly, freely and voluntarily."

"[A] trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Regardless, we note that this court will review the trial court's application of law to the facts purely de novo. State v. Walton, 41 S.W.3d 75, 81 (Tenn.), cert. denied, __ U.S. __, 1225 S. Ct. 341 (2001). Moreover, "in evaluating the correctness of a trial court's ruling on a pretrial motion to suppress, appellate courts may consider the proof adduced both at the suppression hearing and at trial." State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998). However, in the instant case, there was only one proceeding, a joint hearing on a motion to suppress and the bench trial.

Both the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution provide protection for citizens against "unreasonable searches and seizures." Generally, a warrantless search is considered presumptively unreasonable, thus violative

---

[2] Detective Yother explained that the appellant later rescinded his offer to assist the police.

of constitutional protections. State v. Walker, 12 S.W.3d 460, 467 (Tenn. 2000). In the instant case, it is clear that the police did not have a warrant to search the appellant's home; therefore, absent an exception to the warrant requirement, the search was illegal.

Our supreme court has noted that, "[i]t is, of course, well settled that one of the exceptions to the warrant requirement is a search conducted pursuant to consent." State v. Bartram, 925 S.W.2d 227, 230 (Tenn. 1996) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-2044 (1973), and State v. Jackson, 889 S.W.2d 219, 221 (Tenn. Crim. App. 1993)). "The sufficiency of consent depends largely upon the facts and circumstances in a particular case." Jackson, 889 S.W.2d at 221. The prosecution bears the burden of proving that the appellant freely and voluntarily gave consent. State v. McMahan, 650 S.W.2d 383, 386 (Tenn. Crim. App. 1983). We further observe that "'[t]he existence of consent and whether it was voluntarily given are questions of fact.'" State v. Ashworth, 3 S.W.3d 25, 29 (Tenn. Crim. App. 1999) (quoting McMahan, 650 S.W.2d at 386).

The appellant argues that the following language, contained in McMahan, 650 S.W.2d at 386, is determinative of his case:
> The grant of consent for police to enter one's home for any purpose cannot be said to be freely and voluntarily given unless the person consenting is aware of the purpose for which the officers seek to enter. The notion of free and voluntary consent necessarily implies that the person knows what he is allowing the police to do.

The appellant contends that "the police officers gained entry into the house of the [appellant] without informing the [appellant] of the purpose for which the officers sought entry," i.e., the officers did not initially explain that they wished to search the appellant's house. Therefore, the appellant claims, his later consent to search is vitiated. We disagree.

In McMahan, the officers asked the defendant if they could enter the residence to "talk with him." Id. at 385. The defendant consented to the request. Id. Subsequent to the entry, the officers proceeded to search the residence, without asking permission to search. Id. The State argued that the police were implicitly given permission to search because the defendant did not object to the search. Id. at 386. However, this court concluded that "[f]ailure to actively oppose a search being undertaken by law enforcement officers does not constitute the giving of free and voluntary consent." Id. The facts in McMahan are distinguishable from the instant case.

The police arrived at the appellant's residence and requested permission to come inside the house to talk with the appellant. The appellant granted that permission. See State v. Terry Carpenter, No. 85-305-III, 1986 WL 12477, at ** 1-2 (Tenn. Crim. App. at Nashville, November 7, 1986); cf. State v. Steven Lloyd Givens, No. M2001-00021-CCA-R3-CD, 2001 WL 1517033, at *3 (Tenn. Crim. App. at Nashville, November 29, 2001). Once they were inside, Detective Yother explained that the police had received information that the appellant was selling narcotics out of his home and asked the appellant if the police could search the residence. See State v. Mitchell D. Ashley, No. 01C01-9706-CC-00219, 1998 WL 498739, at *9 (Tenn. Crim. App. at Nashville, August 20, 1998). According to the testimony of both police officers, the appellant gave them verbal

-3-

consent to search his house.  See  State v. James Russell Wicks, No. 01C01-9603-CC-00091, 1997 WL 83778, at *4 (Tenn. Crim. App. at Nashville, February 28, 1997).  The appellant, unlike the defendant in McMahan, was fully informed of the facts underlying the request to search prior to giving his consent.   The mere fact that the police waited until they were inside the home before asking to search does not vitiate the appellant's consent to the search because, according to both officers, the search did not commence until the appellant gave his permission.  The trial court specifically found:

> I agree with the State's position on this.  I don't think the consent was involuntary.  I think they are entitled to knock on the door and say, "May we come in," and once they come in, announce their business, and that leaves the owner having the right to say, "Yes," "No," "Go get a warrant," or "Get out of my house" or anything else.  I don't think this consent was involuntary based on what I have heard.

We conclude that the evidence in the record does not preponderate against the trial court's finding. This issue is without merit.

### III.  Conclusion

Finding no reversible error, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE