IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE October 21, 2014 Session

## STATE OF TENNESSEE v. EPHRAIM J. NIELSEN

**Appeal from the Circuit Court for Sevier County No.
15983-IIIRex H. Ogle, Judge**

---

**No. E2014-00038-CCA-R3-CD - Filed February 9, 2015**

---

After entering a conditional guilty plea to robbery pursuant to Tennessee Code Annotated section 40-35-313, Ephraim J. Nielsen ("the Defendant") was arrested on charges of burglary, vandalism over $1,000, and theft of property valued over $1,000 but less than $10,000. Based upon the new charges, his probation officer filed a probation violation warrant against him. After a hearing, the trial court revoked the Defendant's probation and ordered him to serve the balance of his sentence. In this appeal, the Defendant argues that his probation should not have been revoked because the State did not offer proof of every element of the new charges against him. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Bryce W. McKenzie, Sevierville, Tennessee, for the appellant, Ephraim J. Nielsen.

Robert E. Cooper, Attorney General and Reporter; Lacy Wilber, Senior Counsel; James Dunn, District Attorney General; and Patrick Harrell, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

On April 19, 2011,[1] the Defendant entered a guilty plea to robbery. On June 2, 2011, a Stipulation Regarding Sentencing ("the Stipulation") signed by the parties and the trial judge was entered. The Stipulation recites that the Defendant pleaded guilty to robbery in case number 15983 and to fraudulent use of a credit card and theft under the value of $500 in case number 15984. The Stipulation states the Defendant was "deferral eligible" which we interpret to mean a "qualified defendant" pursuant to Tennessee Code Annotated section 40-35-313. At a subsequent sentencing hearing, the trial court placed the Defendant on five years' supervised probation as a function of section 40-35-313 judicial diversion.[2] While on probation, the Defendant was arrested for burglary, vandalism over $1,000, and theft of property valued over $1,000 but less than $10,000. The Defendant's probation officer filed a violation of probation warrant, alleging that the Defendant violated the conditions of his probation by, among other things, committing new offenses.[3]

Bifurcated Probation Revocation Hearing

On October 29, 2013 and December 10, 2013, the trial court conducted a probation revocation hearing. The hearing was bifurcated to allow the State to produce a fingerprint expert.

Michael Gulley had supervised the Defendant's probation for a little over two years and filed the violation of probation warrant against the Defendant. During that time, the Defendant regularly reported to the probation office and passed all drug screens. Additionally, he was making payments toward his fines and court costs, although those payments were sometimes minimal.

---

[1] This is the date shown on the Judgment in case number 15983 sentencing the Defendant to five years, signed by the trial judge on December 10, 2013, and entered in the Circuit Court for Sevier County on October 6, 2014. Another judgment signed on September 4, 2012, and entered September 5, 2012, does not show a date the plea was entered and does not provide a term of years for the sentence.

[2] A Corrected Order of Deferral (Judicial Diversion) was entered on April 21, 2014, *nunc pro tunc* for August 12, 2011, deferring sentence and placing the Defendant on five years' probation.

[3] The violation of probation warrant also alleged that the Defendant had failed to pay fines and court costs. However, at the probation revocation hearing, the State informed the trial court that it was proceeding with the violation solely on the grounds that the Defendant had committed new offenses.

In February, 2013, Detective Tim Williams of the Gatlinburg Police Department responded to a report of a burglary at the Brookside Resort in Gatlinburg. Several items were reported stolen and the laundry room vending machine had been damaged in what appeared to be an effort to pry it open. Detective Williams took fingerprints from the area around the damaged locking mechanism and inside lip of the vending machine. Detective Williams subsequently sent the fingerprints to the Tennessee Bureau of Investigation ("TBI") for identification.[4]

Detective Williams interviewed the Defendant at the police department on June 27, 2013, after the Defendant came to the police station voluntarily. The Defendant denied involvement in the burglary. When Detective Williams asked if the Defendant had ever been inside the Brookside Resort's office or laundry room, the Defendant stated that he had never been on the Brookside Resort property. After Detective Williams' questioning, the Defendant left the police station.

TBI Special Agent David Howell testified that he analyzed the latent fingerprints sent by Detective Williams. Agent Howell determined that there were five identifiable fingerprints and two identifiable palm prints, none of which matched the owner of the Brookside Resort. After completing a fingerprint search in the Automated Fingerprint Identification System ("AFIS") database, Agent Howell determined that two of the latent fingerprints found at the scene matched the Defendant's fingerprints. Both fingerprints were found in the laundry room–one from the laundry vending machine[5] and the other from a washing machine. On cross-examination, Agent Howell stated that he had not been provided the Defendant's name before AFIS identified the Defendant as a "hit" for the fingerprints. Additionally, Agent Howell noted that the latent fingerprints he received from Detective Williams were partial prints. However, he also stated that he had never seen a full fingerprint–not even on a fingerprint card.

Officer Daniel Herron of the Gatlinburg Police Department testified that he received a be-on-the-lookout ("BOLO") call for a "four-door, older model, red, American" car in connection with the Brookside Resort burglary. Officer Herron stopped several cars matching that description, including the 2001 Mitsubishi driven by the Defendant. The Defendant consented to a search of his vehicle, but nothing linking the Defendant to the Brookside Resort burglary was found.

On cross-examination, Officer Herron stated that he stopped the Defendant's car about 15 to 30 minutes after he received the BOLO call. On redirect, Officer Herron admitted that the BOLO call did not contain any information about the car's being "especially beat up" or having a large dent in

---

[4]

The Defendant objected to Detective Williams' testifying as to the results of the TBI fingerprint analysis. To allow the State to call the TBI expert as a witness, the trial court continued the hearing until December 10, 2013. However, before the trial court recessed for the day, it allowed Detective Williams to complete his testimony.

[5]

The record does not reflect whether the fingerprint matched to the Defendant was found on the outside of the vending machine or on the inside lip of the vending machine.

the hood or trunk. He further confirmed that the BOLO call identified a red, older model, American car.

Taylor Nielsen had been dating the Defendant since May 2012, and they were living together in early February 2013. They only had one vehicle, a 2001 Mitsubishi Galant. The car was maroon, almost purple; the entire hood was dented in, the trunk was duct-taped, and the side-view mirror was screwed on. The Defendant would drive the car to and from work, to run errands, and to drive her to work and pick her up when her shift ended. Ms. Nielsen and the Defendant lived "almost across the street" from the Brookside Resort, and according to Ms. Nielsen they sometimes did their laundry in the Brookside Resort laundry room because the laundry facilities at their residence were frequently out of order. Ms. Nielsen stated that the Defendant had a friend who worked at the Brookside Resort and would let them into the laundry room. She further stated that the Defendant accompanied her to the Brookside Resort laundry on at least one occasion in December 2012 or January 2013, and that he touched both the washing machine and the vending machine while there. On crossexamination, Ms. Nielsen said she never saw the Defendant reach around and grab the inside lip of the vending machine to try to pull it open. She further stated that she believed the Defendant was pulled over by the police when he was driving to pick her up from work–around six a.m.

In its ruling revoking the Defendant's probation, the trial court noted that this was a close case but stated that the "tipping point" was the fact that the Defendant flatly denied ever having been on the Brookside Resort property even though his fingerprints were found there and Ms. Nielsen testified that he had done laundry there.

By a Violation of Probation Order signed and entered on December 12, 2013, the trial court revoked the Defendant's probation and ordered him to serve the balance of his sentence. A Corrected Violation of Probation Order was signed and entered on September 16, 2014, *"nunc pro tunc* December 10, 2014." [6] The corrected order set aside the Defendant's deferral on case numbers 15983 and 15984, ordered the Defendant to serve the balance of his sentence, and ordered judgments of conviction to be entered. On December 10, 2013, a Judgment sentencing the Defendant to five years was signed. This Judgment was entered October 6, 2014.

## Analysis

The Defendant's sole issue on appeal is whether the trial court erred in revoking his probation and judicial diversion because the State did not present evidence that the burglary, vandalism, and theft offenses were committed without the effective consent of the victim. The Defendant argues that, even when applying the lower preponderance of the evidence standard,

---

[6]

Based on the fact that the second day of the revocation hearing was December 10, 2013, and the fact that the *nunc pro tunc* date December 10, 2014, is after, not before, the date the order was signed and entered, we believe the date December 10, 2014, was a clerical error and that the order was entered *nunc pro tunc* December 10, 2013.

the State must prove every element of the crime allegedly committed by the Defendant while he was probation. Because the State did not provide any evidence that the alleged offensesoccurredwithoutthe owner'seffective consent,the Defendantcontends that the order revoking his probation should be reversed and the violation warrant dismissed. The State argues that the trial court reasonably inferred from the record that the owner had not given his effective consent.

The trial court may revoke a defendant's probation when it finds, by a preponderance of the evidence, that a defendant has violated the conditions of probation. Tenn. Code Ann. § 40-35-311(e)(1) (2010). This decision rests within the sound discretion of the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). If probation is revoked, the defendant has a right to appeal. Tenn. Code Ann. § 40-35-311(e)(2) (2010). On appeal, we review revocations of probation under an abuse of discretion standard, rather than a *de novo* standard. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). In order for this Court to find that a trial court abused its discretion in revoking a defendant's probation, the record mustcontain no substantial evidence to supportthe trial court's conclusion thatthe defendant violated the conditions of probation. Id.; State v. Terry Maples, No. E2011-01441-CCA-R3CD, 2012 WL 525486, at *4 (Tenn. Crim. App. Feb. 17, 2012) perm. app. denied, (Tenn. May 16, 2012); State v. Kendrick, 178 S.W.3d 735, 738 (Tenn. Crim. App. 2005).

In cases where the alleged violation is the commission of a new offense, the State must present sufficient facts to allow the trial court to find by a preponderance of the evidence that the conduct in question violated the law." The violation need not be proven beyond a reasonable doubt. In making its decision, the trial court may not rely solely on the arrest or the indictment to revoke probation.  Terry Maples, 2012 WL 525486, at *4 (citing State v. Adams, 650 S.W.2d 383, 383 (Tenn. Crim.App. 1983)). However, a police officer's testimony about the facts surrounding the arrest may be used to support a revocation of probation. State v. Eric L. Abell, No. M2006-01981-CCA-R3-CD, 2007 WL 2088949, at *5 (Tenn. Crim. App. 2007).

In this case, Detective Williams testified that he responded to a call for a burglary at the Brookside Resort. During his investigation, he dusted for fingerprints around the damaged locking mechanism of the laundry room vending machine. Two of the latent fingerprints found in the laundry room matched the Defendant, at least one of which came from the laundry room vending machine. The Defendant's statement to police, in which he flatly denied that he had ever been on the Brookside Resort property, was directly contradicted by the circumstantial evidence that his fingerprints were found in the laundry room and by the direct evidence of Ms. Nielsen's testimony that the Defendant had accompanied her to the Brookside Resort to do laundry. Based on the record, we conclude that there was sufficient basis for the trial court to reasonably infer that the owner or operator of Brookside Resort had not given the Defendant consent to burglarize the building, to vandalize the vending machine, or to steal property. The trial court did not abuse its discretion when it revoked the Defendant's probation.

**Conclusion**

For the foregoing reasons, we affirm the judgment of the trial court.


_____
ROBERT L. HOLLOWAY, JR., JUDGE