IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
December 16, 2020 Session

**STATE OF TENNESSEE v. CHRISTAPHER BAUMGARTNER**

**Appeal from the Criminal Court for Bradley County**
**No. 19-CR-151      Sandra Donaghy, Judge**

_____

**No. E2020-00494-CCA-R3-CD**

_____

The Appellee, Christopher Baumgartner, was charged in the Bradley County Criminal Court with vehicular homicide by intoxication, a Class B felony, and driving under the influence (DUI), a Class A misdemeanor. He filed a motion to suppress his blood test results, arguing that he did not voluntarily consent to the blood draw. The trial court held an evidentiary hearing and granted the motion, and the State appeals. Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Stephen D. Crump, District Attorney General; and Sean S. Boers, Assistant District Attorney General, for the appellant, State of Tennessee.

M. Todd Ridley, Assistant Public Defender - Appellate Division (on appeal), Franklin, Tennessee, and Leon Shahan (at hearing), Cleveland, Tennessee, for the appellee, Christapher Baumgartner.

**OPINION**

**I.  Factual Background**

In April 2019, the Bradley County Grand Jury indicted the Appellee for vehicular homicide by intoxication and DUI. The charges resulted from a car wreck on November 12, 2018, in which the Appellee's girlfriend, Jacklynn Sneed, was killed.

In October 2019, the Appellee filed a motion to suppress evidence that was obtained from a warrantless blood draw while he was in the hospital after the wreck. Relevant to this appeal, the Appellee asserted in the motion that he was unable to consent to the blood draw because he was being treated with medication that impaired his cognitive abilities and that he did not write the date of consent on an implied consent form prior to the blood draw, which he was required to do at that time pursuant to Tennessee Code Annotated section 55-10-406(g).[1] The State responded to the motion, arguing that the Appellee voluntarily consented to the blood draw and that suppression of the blood test results was an inappropriate remedy for the Appellee's failure to write the date on the form.

On December 6, 2019, the trial court held a hearing on the motion. At the outset of the hearing, defense counsel advised the trial court that "there are two blood draws in this case. One of which is the subject of our motion to suppress. . . . The other . . . was done pursuant to a search warrant, the same day for the [Appellee's] blood." According to defense counsel, the second blood draw occurred at 2:00 p.m.

The State called Trooper Eric Diaz of the Tennessee Highway Patrol to testify. Trooper Diaz said that about 6:00 a.m. on November 12, 2018, he was dispatched to a hospital to "make contact with an individual that had been in a crash." When Trooper Diaz arrived about fifteen minutes later, the Appellee was lying on a bed in an examination room. A nurse was checking on the Appellee and speaking with him. Trooper Diaz, who was wearing a highway patrol uniform, introduced himself to the Appellee and "started asking him what happened, if he knew he was in a car crash." The Appellee knew he had been in a wreck but did not know what happened after the wreck.

Trooper Diaz testified that he spoke with the Appellee about forty minutes and that the Appellee did not ask him any questions. Trooper Diaz asked the Appellee questions, and the Appellee responded to them appropriately. However, the Appellee's speech was "[q]uiet" and "[v]ery slurred," and his pupils were "constricted." Therefore, Trooper Diaz thought the Appellee was "impaired on some kind of substance." Trooper Diaz acknowledged that law enforcement typically used three standardized field sobriety tests to assess impairment: the Horizontal Gaze Nystagmus (HGN) test, the walk-and-turn test, and the one-leg stand test. Trooper Diaz tried to administer the HGN test to the Appellee by having the Appellee's eyes follow the tip of Trooper Diaz's finger, but the Appellee "could not keep his eyes open long enough to perform this test." Trooper Diaz did not try to administer the other two tests because the Appellee was lying on a hospital bed. Trooper Diaz attempted to administer non-standardized tests, such as the finger-to-nose test and the counting backwards test, to the Appellee. Every time Trooper Diaz tried to instruct the

---

[1] Specifically, the implied consent statute provided that if the operator of a motor vehicle consented to a blood test to determine the alcohol or drug content of the operator's blood in the absence of a search warrant, the operator "shall sign a standardized waiver" and "shall sign and date the waiver and the law enforcement officer shall initial the waiver." Tenn. Code Ann. § 55-10-406(g) (2018).

Appellee on the tests, though, the Appellee kept closing his eyes and "referring to his girlfriend and asking her condition." The Appellee seemed to know that his girlfriend had been in the wreck with him and that she could have been injured.

Trooper Diaz testified that he thought the Appellee was "on some type of substance" and that he asked the Appellee for consent for a blood draw. The Appellee gave verbal consent, so Trooper Diaz read an implied consent form to him. Trooper Diaz saw the Appellee sign the form on the signature line. There was space beside the Appellee's signature for the Appellee to write the date and time of consent, and Trooper Diaz wrote "7:00, 11/12/18" on the line. Trooper Diaz also wrote his initials, "EMD," on the form. He described his conversation with the Appellee as "calm." He said that he did not get angry or raise his voice at the Appellee, that he did not threaten the Appellee, and that he did not point his gun at the Appellee. The curtain to the Appellee's examination room was open, and at least one nurse was present.

On cross-examination, Trooper Diaz acknowledged that the Appellee was supposed to write the date on the implied consent form. Defense counsel asked Trooper Diaz why he wrote the date on the form, and Trooper Diaz responded, "I told him I was dating it. He said it was okay. I told him what date it was. I told him what time it was. I went ahead and put the date and time on there, sir."

Trooper Diaz testified that the Appellee "kept referring back to his girlfriend" and "seemed to lose his train of thought." Based on the Appellee's behavior, Trooper Diaz thought the Appellee was impaired. Trooper Diaz acknowledged that the Appellee was at the hospital to receive treatment for "major" injuries and that the Appellee had an "IV in his arm." Trooper Diaz said that he did not smell alcohol or marijuana on the Appellee and acknowledged that the Appellee could have had normal pupils, could have been alert, and could have been talking to hospital staff when the Appellee arrived at the hospital. He also acknowledged that the Appellee could have been impaired by pain medication the Appellee was receiving in his IV. Trooper Diaz said that although the Appellee kept referring to the Appellee's girlfriend, the Appellee "was talking to me fine."

At the conclusion of the hearing, the trial court stated that it found Trooper Diaz credible. The trial court recalled that Trooper Diaz spoke with the Appellee about forty minutes, that the Appellee was able to respond to the trooper's questions appropriately, that the Appellee knew he had been in a wreck and that his girlfriend had been injured, that Trooper Diaz spoke with the Appellee in a calm voice and did not threaten the Appellee, that the trooper did not display his weapon, and that their conversation occurred in a hospital room with the curtain open. However, the trial court also recalled that the Appellee's speech was quiet and very slurred, that his pupils were constricted, that he was unable to perform the HGN test because he could not keep his eyes open, and that Trooper Diaz thought he was impaired "by something other than alcohol."

The trial court said that the State's proof left various questions in the court's "mind" unanswered. Specifically, what medication did the Appellee receive in his IV? Did the medication affect his ability to process information? Was he "going into a state of quasi unconsciousness where he [was] unable to make good decisions[?]" The trial court found that the Appellee "tried to give consent" by signing the implied consent form but noted that "there's no way that I can make Christapher Baumgartner out of that signature." The trial court also noted that Trooper Diaz wrote the date and time on the form for the Appellee when the statute in question provided that the Appellee "shall" write the date on the form. The trial court then stated as follows:

> I think given all of these unknowns that are in my mind, the fair way to handle this is to conclude that there has been insufficient evidence presented by the State of Tennessee to allow me as the Finder of Fact on this issue, to conclude that [the Appellee] fully understood what he was doing by signing, or putting this writing on this form, and I will accredit the argument of the Defense that shall, means shall.

> And so I find that the appropriate remedy is the exclusion of this blood sample.

## II. Analysis

### A. Jurisdiction

As an initial matter, the Appellee claims that this court lacks jurisdiction over the State's appeal because a second blood sample was obtained from the Appellee pursuant to a search warrant; therefore, the trial court's granting the Appellee's motion to suppress did not preclude the State from proving the Appellee's intoxication with other evidence and did not require dismissal of the indictment. The State responds that this court has jurisdiction. We agree with the State.

After the trial court announced its ruling at the suppression hearing, the State indicated that it may pursue an interlocutory appeal and requested that the Appellee's case "be taken off the trial docket." The trial court noted that defense counsel claimed the results of another blood test were available and asked, "[W]hat does it matter which blood you go with?" The State explained as follows: The results of the first warrantless blood draw, which were the subject of the motion to suppress, showed methamphetamine and marijuana in the Appellee's system. The sample for the second blood draw, which was obtained later that day pursuant to a search warrant, showed marijuana in the Appellee's system but was insufficient for further testing. Therefore, "[t]he samples do have different results." The trial court stated that it would consider the State's request to remove the case from the trial docket after the State decided whether to pursue an interlocutory appeal.

On January 7, 2020, the trial court entered a written order setting out its findings from the suppression hearing and granting the Appellee's motion to suppress. On February 24, 2020, the trial court entered a second order providing as follows:

> This Cause came to be heard on the 24th day of February, 2020. On December 6, 2019, this Court ruled that a blood sample obtained by Trooper Eric Diaz should be suppressed. Based upon the representations of the State of Tennessee, the suppression of this sample negates a necessary element of both Tenn. Code Ann. §§ 39-13-213(a)(2) and 55-10-401, as the State is required to prove the Defendant was intoxicated. Accordingly, the suppression order operates as an effective dismissal of Counts 1 and 2 and those counts are hereby DISMISSED.

Relevant to this case, Tennessee Rule of Appellate Procedure 3(c) provides that an appeal by the State "lies only from an order or judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Criminal Appeals: (1) the substantive effect of which results in dismissing an indictment, information, or complaint[.]" In support of his argument that this court lacks jurisdiction, the Appellant refers this court to State v. Shannon A. Holladay, No. E2004-02858-CCA-R3-CD, 2006 WL 304685 (Tenn. Crim. App. at Knoxville, Feb. 8, 2006). In that case, the trial court granted the defendant's motion to suppress, and the State appealed that ruling to this court, claiming that the trial court erred by granting the motion. Shannon A. Holladay, No. E2004-02858-CCA-R3-CD, 2006 WL 304685, at *1. This court first addressed whether it had jurisdiction over the State's appeal pursuant to Rule 3(c)(1), noting that a trial court's suppression of evidence did not automatically result in dismissal of a case. Id. at *2. This court concluded that the trial court's suppression order did not preclude the State from introducing other evidence to prove the charges against the defendant; therefore, the suppression order did not have the "substantive effect" of dismissing the indictment, and this court did not have jurisdiction. Id. at *3.

As noted by the State, though, Shannon A. Holladay is distinguishable from the present case in that the trial court in this case entered an order unequivocally dismissing the charges against the Appellee. Moreover, two years after this court issued its opinion in Shannon A. Holladay, our supreme court interpreted Tennessee Rule of Appellate Procedure 3(c)(1) to mean that "the order suppressing or excluding the evidence must produce the entry of an order dismissing an indictment, information, or complaint." State v. Meeks, 262 S.W.3d 710, 720 (Tenn. 2008). That is precisely what happened in this case: The order suppressing the evidence resulted in the entry of an order dismissing the indictment. Therefore, we have jurisdiction over the State's appeal pursuant to Rule 3.

## B. Motion to Suppress

The State contends that the trial court erred by granting the motion to suppress the Appellee's blood test results because the evidence at the suppression hearing showed that he actually consented to the blood draw. The Appellee argues that the trial court properly concluded that the State failed to carry its burden of establishing voluntary consent. The Appellee also argues that the State has waived review of the trial court's alternative ground for suppression, i.e., that the Appellee failed to write the date on the implied consent form, because the State failed to address the issue in its appellate brief. The State responds that the trial court did not specifically identify the Appellee's failure to write the date on the form as an independent basis for suppression. We conclude that the trial court did not err by granting the motion to suppress.

In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. Nevertheless, appellate courts will review the trial court's application of law to the facts purely de novo. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Furthermore, the Appellee, as the prevailing party, is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23.

A case involving the collection of a blood sample is a search and seizure case subject to the constitutional limitations of the Fourth Amendment and Article I, Section 7 of the Tennessee Constitution, which protect against unreasonable searches and seizures. See Birchfield v. North Dakota, 136 S. Ct. 2160, 2173 (2016); State v. Scarborough, 201 S.W.3d 607, 616 (Tenn. 2006). "An accused's blood cannot be taken or analyzed unless the search is reasonable pursuant to the Fourth Amendment." State v. Henry, 539 S.W.3d 223, 234 (Tenn. Crim. App. 2017) (citing Birchfield, 136 S. Ct. at 2173). Generally, a warrantless search is considered presumptively unreasonable and, thus, violative of constitutional protections. See State v. Walker, 12 S.W.3d 460, 467 (Tenn. 2000). However, "one of the exceptions to the warrant requirement is a search conducted pursuant to consent." State v. Bartram, 925 S.W.2d 227, 230 (Tenn. 1996) (citing Schneckloth, 412 U.S. at 219, and State v. Jackson, 889 S.W.2d 219, 221 (Tenn. Crim. App. 1993)). "The sufficiency of consent depends largely upon the facts and circumstances in a particular case." Jackson, 889 S.W.2d at 221. Whether consent exists and "'whether it was voluntarily given are questions of fact.'" State v. Ashworth, 3 S.W.3d 25, 29 (Tenn. Crim. App. 1999) (quoting State v. McMahan, 650 S.W.2d 383, 386 (Tenn. Crim. App. 1983)). The prosecution bears the burden of proving that the defendant freely and voluntarily gave consent. See McMahan, 650 S.W.2d at 386.

As this court has explained,

Factors to consider in determining whether consent is voluntary include the time and place of the encounter, whether the encounter was in a public or secluded place, the number of officers involved, the degree of hostility during the incident, whether weapons were displayed, whether consent was requested, and whether the consenter initiated contact with the police. [State v. Cox, 171 S.W.3d 174, 185 (Tenn. 2005)]. In addition, an individual's "age, education, intelligence, knowledge, maturity, sophistication, experience, prior contact with law enforcement personnel, and prior cooperation or refusal to cooperate with law enforcement personnel" are relevant in determining whether consent is voluntary. Id. (internal quotation marks omitted). Also, proof including, but not limited to, evidence regarding the defendant's physical condition and the adverse effects of medications on a defendant's judgment and reasoning may establish that a defendant lacks the capacity to voluntarily consent. Cf. [State v. Reynolds, 504 S.W.3d 283, 309 (Tenn. 2016)]. Finally, . . . an individual's "'[k]nowledge of the right to refuse consent'" is also a factor in determining the voluntariness of consent. Id. at 307 (quoting Schneckloth, 412 U.S. at 235-47).

Henry, 539 S.W.3d at 241-42.

Turning to the instant case, we note that the trial court did not find that the Appellee's consent to the blood draw was involuntary. Instead, the trial court concluded that the State failed to meet its burden of proving that the Appellee's consent was voluntary. In reaching that conclusion, the trial court found that Trooper Diaz was a credible witness and recalled portions of his testimony that weighed in favor of finding voluntary consent: the Appellee was able to respond to the trooper's questions appropriately, the Appellee knew he had been in a car wreck and that his girlfriend had been injured, the trooper spoke with the Appellee in a calm voice and did not threaten him, the trooper did not display his weapon, and the trooper's conversation with the Appellee occurred in a hospital room with the curtain open.

The trial court also recalled portions of the trooper's testimony that weighed in favor of finding that the Appellee's consent for the blood draw was involuntary: the Appellee's speech was quiet and very slurred, his pupils were constricted, he was unable to perform the HGN test because he could not keep his eyes open, and the trooper thought he was impaired. Additionally, the trial court noted that the Appellee's signature on the implied consent form was illegible and that he failed to write the date on the form as required by Tennessee Code Annotated section 55-10-406(g) (2018). Moreover, we note that Trooper Diaz testified that he told the Appellant the date and the time. In sum, the trial court determined that while some factors weighed in favor of finding voluntary consent, the State ultimately failed to carry its burden of proving to the trial court that the Appellee voluntarily consented to the blood draw. The facts do not preponderate against the trial court's findings, and the trial court was in the best position to weigh the evidence.

Therefore, we cannot say that the trial court erred by granting the Appellee's motion to suppress. Accordingly, any issue regarding the Appellee's failure to write the date of his consent on the implied consent form pursuant to Tennessee Code Annotated section 55-10-406(g) (2018) is moot.

### III.  Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA MCGEE OGLE, JUDGE